UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

MAD TOYZ III, LLC AND
JEFFREY KNIGHT AS THE OWNERS   Case. No. 8:25-cv-1914-KKM-TGW
OF A 2018 38' STATEMENT
380 OPEN MOTORBOAT BEARING
HULL IDENTIFICATION NUMBER
STTEB112L718, HER ENGINES,
TACKLE, AND APPURTENANCES.

     Petitioners.

_____/

## **REPORT AND RECOMMENDATION**

On April 27, 2025, a 2018 38-foot Statement 380 Open Motorboat (the "Vessel") owned and operated by Petitioners collided with the Clearwater Ferry *Maddie's Crossing*. Petition (Doc. 1). On July 21, 2025, Petitioners filed this admiralty action, seeking exoneration from, or limitation of, liability for the accident. Doc. 1. The deadline for filing claims has passed, and the Clerk has entered default against all non-appearing claimants. Doc. 187. Now, Petitioners move without opposition for entry of a final default judgment, exonerating them from liability as to all non-appearing claimants, including but not limited to Atlantic Specialty Insurance Company, Blair Jenkins, City of Clearwater, Joann Marolda, and Joseph Bonga. Docs. 261, 262, 263, 264, 265, 266. I respectfully recommend that the District Court grant the motion.

## I.    Legal Context

The Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, et seq., allows a vessel owner to limit—to the value of the vessel or the owner's interest in the vessel—the owner's liability for damage or injury that occurs without the owner's privity or knowledge. 46 U.S.C. § 30529; *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1325 (11th Cir. 2019). The procedures for seeking exoneration from, or limitation of, liability for damage are governed by both the Limitation of Liability Act and Supplemental Rule F of the Supplemental Rules for certain Admiralty and Maritime claims.

Under Supplemental Rule F(1), "Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute." Suppl. R. F(1). Supplemental Rule F(1) also requires the vessel owner to deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor," as well as "security for costs and, if [it] elects to give security, for interest at the rate of 6 percent per annum from the date of the security." *Id.*

Once a vessel owner, that is, the petitioner in a Limitation of Liability Action, complies with Supplemental Rule F(1) by timely filing the complaint and making the deposit with the court, the Limitation of Liability Act and the Supplemental Rules require a court to take two actions. First, the court must

2

issue a stay in all other claims and proceedings against the owner that are related to the incident involving the vessel at issue in the Limitation of Liability Action. *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1257 (11th Cir. 2014) (citing 46 U.S.C. § 30511). Second, a court must "issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." Supp. R. F(4). This notice is also known as a monition.

> The notice procedures for a monition are as follows:

> [T]he court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at the decedent's last known address, and also to any person who shall be known to have made any claim on account of such death.

Supp. R. F(4).

Once notice has been given, all claims "shall be filed and served on or before the date specified in the notice." Supp. R. F(5). Furthermore, "[i]f a claimant desires to contest either the right to exoneration from or to limitation of liability, the claimant shall file and serve an answer to the complaint unless the claim has included an answer." *Id.*

Under the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Federal Rules of Civil Procedure apply to admiralty claims "except to the extent that they are inconsistent with the[ ] Supplemental [Admiralty] Rules." Supp. R. A(2). Federal Rule of Civil Procedure 55 is not inconsistent with the Supplemental Admiralty Rules governing limitation of liability actions. Rather, consistent with Rule 55, Supplemental Rule F(4) requires notice to all persons asserting claims against the petitioner (each "a party against whom a judgment for affirmative relief is sought") and Supplemental Rule F(5) contemplates a noticed deadline on which they must appear to make a claim. Accordingly, Rule 55 has been found to apply in admiralty actions. *See, e.g., United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004).

Thus, in Limitation of Liability actions, entry of Clerk's default is warranted against each party who fails to file a claim within the period

4

designated by the Court, provided that the petitioner has supplied the required notice. Entry of a Clerk's default under Rule 55(a) deems a defaulted party to admit a petitioner's well-pleaded allegations of fact. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defaulted party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton*, 402 F.3d at 1278 (citation and quotations omitted).

So, notwithstanding entry of a Clerk's default, the Court's may enter a default judgment under Rule 55(b) only where the pleadings sufficiently support a judgment. *Id.* In deciding a motion for default judgment, the Court should assess the pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). In other words, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    Factual Background

As alleged in their Amended Petition (Doc 228), on April 27, 2025, a 2018 38-Foot Statement 380 Open Motorboat (the "Vessel"), owned and operated by Petitioners, Mad Toyz III, LLC and Jeffrey Knight, collided with the Clearwater Ferry *Maddie's Crossing* (the "Incident"). Am. Pet. (Doc. 228) ¶¶ 5,

8, 11. At the time of the Incident, there were more than 40 passengers on board the Clearwater Ferry. *Id.* ¶ 15.

Seeking to minimize or eliminate their exposure for the Incident, the Petitioners filed a petition on July 21, 2025, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, et seq., as well as Rule F of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Doc. 1. Petitioners later filed an Amended Petition. Doc. 228.

On July 28, 2025, the Court approved the Petitioners' ad interim stipulation for value, directed the issuance of a monition instructing all potential claimants to join in this action prior to September 8, 2025, and ordered that a notice of monition be published in the Tampa Bay Times and mailed to every person or corporation known to have a claim against Petitioners arising out of the Incident. Doc 9. The Petitioners thereafter published the notice of monition in the Tampa Bay Times on August 3, 10, 17, and 24, 2025. Doc 54-1. Additionally, the Petitioners mailed the notice issued by the Court to all known claimants. Docs. 23, 25, 33, 36.

The notice of monition established a September 8, 2025 deadline for all persons or entities with claims arising from the Incident to file such claims with the Clerk of Court and to serve a copy on the Petitioners' attorneys. Docs. 9, 10, 11. The notice also advised that a failure to timely file a claim could result in a default. Doc. 11 p. 2. The September 8, 2025 deadline passed, and

the following claimants appeared: Vallantine Howson (Doc. 17); Daywon Buchanan, Jennifer Buchanan, Mya Buchanan, and Alexandra Martin (Doc. 26); Angela Blackshaw (Doc. 27); Steven Whitehurst, Sr., Steven Whitehurst, Jr., Tatiana Roman, Doris Blackwell, and Stephanie Whitehurst, on behalf of herself and her child M.F. (Doc. 40); Sandy Beatriz Todd, as personal representative of the estate of Jose Castro, Jenny Elizabeth Hernandez, on behalf of minor children J.E.C. and I.E.C., and Carmen Ulloa Rondon (Doc. 51); Nicole Makelele (Doc. 48); Brenda Alvarez, individually and as a parent of A.P.A. and Marcoantonio Pacheo Figeroa (Doc. 55); Jayla Abrams, individually and as parent of A.B., A.B., I.B., and Z.B. (Doc. 62); Joseph Miller (Doc. 64); Matthew Lyon (Doc. 65); Scott Strelka (Doc. 66); Dennis Kimerer (Doc. 72); Pinellas Suncoast Transit Authority (Doc. 78); Clearwater Ferry Services (Doc. 83); John M. Zanella and Ma Dolores Estrada Lozano-Zanella (Doc. 81); Idalys Acosta and Pablo Acosta (Doc. 85); Veronica Bertoldo (Doc. 93); and Mathew Pearce (Doc. 94).

Accordingly, on September 17, 2025, the Petitioners moved for the entry of Clerk's default against Atlantic Specialty Insurance Company (Doc. 109), Blair Jenkins (Doc. 110), City of Clearwater (Doc. 111), Joann Marolda (Doc. 112), Joseph Bonga (Doc. 113), and all other non-appearing potential claimants (Doc. 114). I granted those motions (Doc. 178), and the Clerk subsequently entered default against all non-appearing potential claimants (Doc. 187).

7

Thereafter, Petitioners filed an Amended Complaint.[1] Doc. 228. In the Amended Complaint Petitioners reprised their basic allegations and additionally pleaded that they properly maintained, manned, equipped and supplied the Vessel and "operated the Vessel at a reasonable speed for the circumstances and conditions[ and] maintained a proper lookout." Am. Compl. (Doc. 228) ¶¶ 31, 33, 40. Petitioners claim the incident was caused entirely by the ferry, which was overloaded and slow-moving in a channel at night with no lights. Am. Compl. (Doc. 228) ¶ 28.

Petitioners then moved for default judgment as directed by the Court. Docs. 261, 262, 263, 264, 265, 266.

## III. Analysis

### a. Subject Matter Jurisdiction

The Limitation of Liability Act does not independently confer subject matter jurisdiction on this Court. *See Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046 (11th Cir. 1989) ("[W]e conclude that appellant may not base admiralty jurisdiction solely upon the Limitation Act[.]"). Rather, the test

---

[1] Petitioners moved for default judgment (Docs. 198, 199, 200, 201, 202, 203). But the Court questioned whether the initial Petition satisfied the requirements of a Complaint set forth in Supplemental Rule F(2) (Doc. 159) and, with the consent of Petitioners, directed Petitioners to file an amended petition (Doc. 223). The Amended Petition (Doc. 228) cured the defects identified by the Court and allayed the Court's concerns.

for subject matter jurisdiction in a Limitation of Liability Act is whether the action arises under the Court's admiralty jurisdiction.[2]

Subject matter jurisdiction for an admiralty case requires that the "wrong" at the heart of the action both (1) occurred on navigable waters and (2) had a significant connection with traditional maritime activity. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982). As to the former requirement, a waterway is navigable when it is presently used, or is capable of being used, as an interstate highway for commercial trade or travel. *The Daniel Ball*, 77 U.S. 557, 563 (1870).[3] And, as to the latter requirement, it does not require that the wrong be directly connected with commercial maritime activity. *Foremost Ins.*, 457 U.S. at 674–75 ("The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if all operators of vessels on navigable

---

[2] The Constitution provides that the federal judicial power "shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U. S. Const., Art. III, § 2, cl. 1. Congress implemented this jurisdictional grant in what is now 28 U.S.C. § 1333(1), which provides that district courts enjoy "original jurisdiction, exclusive of the courts of the States, of[] . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

[3] Although *The Daniel Ball* was essentially a Commerce Clause case, it has been applied by many courts in deciding admiralty jurisdiction and is considered authoritative in this area of law. *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

waters are subject to uniform rules of conduct."). Thus, the Supreme Court has found that the negligent operation of a pleasure vessel on navigable waters, had "a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." *Id.* at 674.

This action involves the collision of a motorboat and a passenger ferry "near the Memorial Causeway Bridge in Clearwater, Florida on the Navigable Waters of the United States." Doc. 228 ¶ 11. The navigable water under the Memorial Causeway Bridge is the Intracoastal Waterway. State Road 60 Memorial Causeway Bridge Project Development & Environment (PD&E) Study, FLORIDA DEPARTMENT OF TRANSPORTATION, *available at* https://www.fdotd7studies.com/projects/sr60-memorial-causeway-bridge/ (last visited April 22, 2026). And, the Intracoastal Waterway is a navigable water of the United States. *See, e.g., United States v. Sasser*, 967 F.2d 993, 995 (4th Cir. 1992) ("The Intracoastal Waterway" is a "navigable water[ ] of the United States."); *United States v. Hollywood Marine, Inc.*, 519 F. Supp. 688, 690 (S.D. Tex. 1981) (referring to the Intracoastal Waterway as "a navigable water of the United States"). Thus, the first part of the jurisdictional test is satisfied. And, the second part of the jurisdictional test is satisfied, because the Supreme Court has held that the collision involving a pleasure watercraft has a sufficient nexus to traditional maritime activity to sustain a district court's admiralty jurisdiction. *Foremost Ins.*, 457 U.S. at 674.

10

This Court has subject matter jurisdiction over this action.

b. <u>Proper Notice of Petition</u>

Pursuant to Rule F(4), the Court established methods through which Petitioners were required to provide notice to all potential claimants, and established a September 8, 2025 deadline for all persons to file claims against Petitioners arising from the April 27, 2025 Incident. Doc. 9. Petitioners sent notice of the proceeding and of the deadline to those involved in the collision and published notice to the general public through court-ordered procedures, and in accordance with Supplemental Rule F(4). *See* Docs. 23, 25, 33, 36, 54-1.

Rule F(5) states that all claims "shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule." Supp. R. F(5). Federal Rule of Civil Procedure 55(a) provides that the Clerk shall enter a default when someone against whom relief is sought fails to plead or otherwise defend the action. Fed. R. Civ. P. 55(a). Here, potential claimants were required to file claims by September 8, 2025. Doc. 9. Only the claimants identified above filed claims. The claims period then closed.

All non-appearing claimants "failed to plead or otherwise defend" in the present action. Therefore, entry of Clerk's default under Federal Rule of Civil Procedure 55(a) was proper.

Finally, although an Amended Complaint was filed after entry of Clerk's default against the non-appearing claimants (Doc. 228), no service was

11

required on the non-appearing claimants. Rule 5 requires that an amended complaint be served on every party but "[n]o service is required on a party who is in default for failing to appear" as long as the pleading does not assert a new claim for relief against the party. FED. R. CIV. P. 5(a)(1)(B), (2). For purposes of Rule 5, any party that has failed to timely appear is "in default for failure to appear," even if the Court has not adjudicated a party as being "in default." *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1368 n.3 (11th Cir. 1982) (citations omitted).

    c. Personal Jurisdiction

Generally, a court must ensure it has personal jurisdiction over defaulting defendants. The Eleventh Circuit uses a two-part test "in determining whether the exercise of personal jurisdiction [over] a non-resident defendant is proper." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)). It determines "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* And, it determines "whether the exercise of jurisdiction would be appropriate under [the relevant] state's long-arm statute." *Id.*

The defaulting parties here, however, are not traditional defendants, but non-appearing claimants. Under the Limitation of Liability Act, "all claims

12

[against the petitioner] are marshaled and brought into one action—establishing a 'concursus'[4] of all claims." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999) (quoting *Md. Casualty Co. v. Cushing*, 347 U.S. 409, 414, (1954)). Thus, any claimant who seeks to argue that the petitioner in a Limitation of Liability Act action is not entitled to the protections of the Act must go to the court in which the petition was filed; this is the only court where claims may be filed. "If every potential claimant could simply argue that the court in which the limitation action was filed lacks personal jurisdiction over them, and thus they need not file claims before that Court, a concursus of claims would not be achievable and the Limitation Act would be rendered useless." *In re F/V Misty Blue, LLC*, No. CV1712773RMBAMD, 2018 WL 1837827, at *2 n.2 (D.N.J. Apr. 18, 2018).

Moreover, traditional jurisdictional Due Process concerns are not implicated here. The purpose of the Due Process Clause is to "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where

---

[4] A concursus is "[a]n equitable proceeding in which two or more creditors claim, usually adversely to each other, an interest in a fund or estate so that they can sort out and adjudicate all the claims on the fund." CONCURSUS, Black's Law Dictionary (12th ed. 2024). The purpose of the concursus "is not to prevent a multiplicity of suits but . . . to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 642 (6th Cir. 1982) (citation omitted).

13

that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defaulting claimants in this action, unlike traditional defendants, are not being hailed into a foreign court to defend an action against them but rather, being afforded the opportunity to contest a petitioner's limitation of liability.[5]

Given the nature of a Limitation of Liability Act action, I need not find that the Court has personal jurisdiction over each non-appearing claimant.

d.  Applicability of the Limitation of Liability Act

The Limitation of Liability Act applies only to "owners" of "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C. § 30502(a); 30529(a). Thus, both Petitioners, as well as the Vessel, must fall within those definitions.

i.  Petitioners are Owners

Limitation of Liability Act proceedings may be initiated by vessel owners. The Limitation of Liability Act defines "owner" as a "charterer that

---

[5] A default judgment in this context merely limits a person's right to full recovery in tort. A limitation on a common law measure of recovery does not deprive a party of a fundamental right to "life, liberty, or property" but, instead, is a "classic example of an economic regulation." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83 (1978) ("It is by now well established that [such] legislative Acts . . . come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." (citation omitted)).

mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501(2). Courts have expanded the definition of owner or charterer to encompass parties in analogous situations who exercise dominion and control over a vessel and are, therefore, owners pro hac vice, even if not technically charterers. *See Dick v. United States*, 671 F.2d 724, 727 (2d Cir. 1982) (The term "owner" is to be interpreted in a "liberal way."); *Petition of the United States*, 259 F.2d 608, 609 (3d Cir. 1958) (noting that the words "charter" or "charter party" need not be present in a contract in order for the person taking over the operation of the ship to be considered a charter party or temporary owner). Rather, "one who is subjected to a shipowner's liability because of [its] exercise of dominion over a [i.e., relationship to] [the] vessel should be able to limit [its] liability to that of an owner." *In re Houseboat Starship II*, 2005 WL 3440788, at * 3 (M.D. Tenn. Dec. 12, 2005) (quoting *Complaint for Exoneration of or Limitation of Liability of Shell Oil Company, et al.*, 780 F. Supp. 1086 (E.D. La. 1991) (entitling both owner and "de facto operator of the vessel" to limit their liability)).

In other words, "if the petitioner may be held liable because of his ownership or control of the vessel," he is an owner for purposes of the Limitation of Liability Act. *Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 156 (S.D.N.Y. 1991); *Houseboat Starship II*, 2005 WL 3440788 at *3 ("[T]he act is designed to cover one who is a 'likely target' for liability claims"

15

predicated on its status as the entity "perhaps ultimately responsible for the vessel's maintenance and operation."); *In re Complaint for Exoneration From or Limitation of Liability of Shell Oil Co.*, 780 F. Supp. at 1089–90 ("The rule that emerges from all of the cases interpreting ownership . . . is that if the plaintiff in limitation may be held liable because of his ownership or control of the vessel, then he can maintain a limitation action.").

So the first question here is whether the Petition establishes that Petitioners are either title-holding owners or that they exercised sufficient dominion and control over the vessel to be owners pro hac vice. Here, the Petition establishes that Mad Toyz III, LLC was the titled owner of the Vessel. Am. Pet. (Doc. 228) at ¶ 3. Therefore, the Limitation of Liability Act applies to it. And, Petitioner Jeffrey Knight had control of the Vessel sufficient to render him de facto owner under the Act, as evidenced by facts in the Amended Petition establishing that he exercised dominion and control over the Vessel and owned Mad Toyz III, LLC, the titled owner. *Id.* at ¶¶ 4, 31. Thus, I find that Petitioners are "owners" able to seek relief under the meaning of the Limitation of Liability Act.

### ii. The Act Applies to the Vessel

The Limitation of Liability Act applies to "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C. § 30502(a). But, beginning on December 23, 2022, the

16

Limitation of Liability Act no longer applied to "covered small passenger vessels." *Id.* § 30502(b).

The Act defines a "small passenger vessel" as "a vessel of less than 100 gross tons . . . (A) carrying more than 6 passengers, including at least one passenger for hire; (B) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers; (C) that is chartered with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers; (D) that is a submersible vessel carrying at least one passenger for hire; or (E) that is a ferry carrying more than 6 passengers." *Id.* § 2101(47). The Act defines a "covered small passenger vessel" as a "small passenger vessel" that is not a wing-in-ground craft and is carrying "not more than 49 passengers on an overnight domestic voyage; and [ ] not more than 150 passengers on any voyage that is not an overnight domestic voyage." *Id.* § 30501(1).

It is the Petitioner's burden to show, in the Petition, that the Limitation of Liability Act applies. *E.I. Du Pont De Nemours & Co. v. Bentley*, 19 F.2d 354, 354 (2d Cir. 1927) ("It must appear from the pleading itself that the petitioner is a charterer of the kind described in the statute . . . . Whether other facts might bring him within the statute we need not inquire. We must go by the pleading."); *Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 155

17

(S.D.N.Y. 1991) ("One seeking to invoke the limitation of liability statute bears the burden of pleading facts establishing entitlement to do so.").

The Amended Petition alleges,

> On board the Limitation Vessel at the time of the incident (and for the voyage described above) were passengers Alexis Ringel, Blair Jenkins and her two-week old baby Madden Jenkins, Kathryn Talbert and Daniele Ely. All of the foregoing were personal guests and not paying passengers on the Limitation Vessel. There were no passengers for hire on board the Limitation Vessel.

Doc. 228 ¶ 9. These allegations sufficiently demonstrate that the Vessel was not excluded from the Act as a "covered small vessel," because it (A) did not have any passengers for hire, (B) was not carrying more than 6 passengers, (C) was not carrying more than 12 passengers, (D) was not a submersible vessel carrying at least one passenger for hire, and (E) was not a ferry. *Id.*

Because the Vessel is not a "covered small passenger vessel," the Limitation of Liability Act applies to the Vessel. *See* 46 U.S.C. § 30502.

e.  <u>Limitation or Exoneration from Liability</u>

The Limitation of Liability Act limits a vessel owner's liability for any "loss, damage, or injury by collision . . . done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). Generally, in determining whether to limit a petitioner's liability, courts consider (1) whether there are any acts of negligence that caused the accident, and if so, (2) whether those acts of negligence were those associated with the shipowner's

18

vessel, and, if so, (3) whether the shipowner had knowledge of or was in privity with those same acts of negligence. *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1306 (11th Cir. 2023) (citations omitted) (noting that, while this procedure is "typical," it need not be applied rigidly).

If the accident was not caused by negligence associated with the shipowner's vessel, then the shipowner is exonerated from all liability. *See American Dredging Co. v. Lambert*, 81 F.3d 127, 129 (11th Cir. 1996). But if negligent control of the shipowner's vessel was in any way responsible for the accident, the court must determine whether the shipowner had knowledge of, or was in privity with, the negligence. *Beiswenger Enterprises*, 86 F.3d at 1036. And "consistent with the statutory purpose to protect innocent investors, 'privity or knowledge' generally refers to the vessel owner's personal participation in, or actual knowledge of, the specific acts of negligence or conditions of unseaworthiness which caused or contributed to the accident." *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996).

Importantly, the claimant bears the initial burden of proving negligence or unseaworthiness, while the shipowner has the burden to prove the lack of privity or knowledge. *Hercules Carriers v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1564 (11th Cir. 1985).

As to the negligence question, the non-appearing claimants have not appeared, and thus have not demonstrated that Petitioners negligently caused

19

the accident. *See Petition of M/V Sunshine, II*, 808 F.2d 762, 764 (11th Cir. 1987) ("If the claimants desired to contest exoneration or limitation they were required to answer."); *see also* Supp. R. F(5). Nevertheless, even without such a showing, a party cannot avail itself of a Limitation of Liability Act action (and be awarded exoneration) if it is "impossible under any set of circumstances for the vessel owner to demonstrate the absence of privity or knowledge." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1306 (11th Cir. 2023) (citing *Suzuki*, 86 F.3d at 1064).

Here, however, Petitioners' well-pleaded facts establish it could have been free from negligence and from privity or knowledge with any negligent act. Petitioners plead that the Vessel was "seaworthy, properly maintained, manned, equipped, supplied and fit and safe for her intended purpose." Am. Compl. (Doc. 228) ¶ 23. They further plead that they "operated the Vessel at a reasonable speed for the circumstances and conditions [and] maintained a proper lookout." *Id.* ¶ 12.

Under the facts alleged, it is plausible that Petitioners were not negligent, but that the accident was caused by the negligence of another (the ferry). In other words, Petitioners sufficiently plead that they were not responsible for the accident, because they assert facts that, if true, would demonstrate that "the procedures and equipment utilized rendered the vessel reasonably fit under the circumstances." *Farrell Lines Inc. v. Jones*, 530 F.2d

7, 13 (5th Cir. 1976)[6] (finding lack of privity on the part of the owner because "the vessel as equipped was reasonably capable of performing the intended mission if properly operated").

Because the non-appearing claimants establish neither negligence nor unseaworthiness, and because the facts pleaded in the Amended Petition would establish that Petitioners had neither knowledge nor privity of the specific acts that caused or contributed to the accident, entry of final default judgment exonerating Petitioners from liability against all non-appearing claimants is appropriate.

## IV.    Conclusion

Having found that the Court has subject matter jurisdiction over this case, that Petitioners properly noticed non-appearing claimants of this action, that potential claimants failed to timely appear, and that the non-appearing claimants thus admitted to facts that would entitle Petitioners to exoneration from liability under the Limitation of Liability Act, I respectfully recommend that the Court:

1. Grant Petitioners' unopposed motions for entry of final default judgment in their favor (Docs. 261, 262, 263, 264, 265, 266), exonerating them

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

21

from liability as to all non-appearing claimants, including but not limited to Atlantic Specialty Insurance Company, Blair Jenkins, City of Clearwater, Joann Marolda, and Joseph Bonga; and

2. Pursuant to Rule 58, enter a judgment against all persons and entities who have failed to file claims and/or answers by the claims deadline, and bar them from filing future claims against Petitioners arising from the April 27, 2025 accident more fully described in Petitioners' Amended Complaint.

**SUBMITTED** for consideration on April 24, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.