**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

MAD TOYZ III, LLC, and
JEFFRY DAVID KNIGHT,                    Case No. 8:25-cv-1914-KKM-TGW

      Petitioners,

_____

## **ORDER**

Petitioners Jeffry Knight and Mad Toyz III, LLC, move to stay this action

pending the resolution of criminal proceedings against Knight in state court.

*See* Mot. (Doc. 280). Claimants Sandy Beatriz Todd and the Pinellas Suncoast

Transit Authority (PSTA) oppose the stay.[1] *See* Todd Resp. (Doc. 286); PSTA

Resp. (Doc. 293). For the following reasons, I deny the petitioners' motion.

## I.  BACKGROUND

On April 27, 2025, Knight operated a 38' motorboat vessel that collided

with the Clearwater Ferry, *Maddie's Crossing*, resulting in the death of a

passenger aboard the *Maddie's Crossing*, injuries to others, and damage to

each vessel. *See* Am. Pet. (Doc. 228) ¶¶ 11–12, 18; *see* (Doc. 293-1) ¶ 8; PSTA

Resp. at 2. On July 21, 2025, Knight and Mad Toyz III, the "title owner" of the

vessel, petitioned for exoneration from, or limitation of, liability related to the

---

[1] Although the petitioners represent that all other claimants except Clearwater Ferry
Services, LLC, oppose the motion, no other claimant filed a response. *See* Mot. at 5.

collision, *see* Pet. (Doc. 1), and all other civil liability actions in state or federal court were stayed pending the resolution of the limitation action, *see* (Doc. 9) at 3. Since then, forty-one claims have been filed against one or both petitioners in this action. *See* Summary of Claims (Doc. 103).

On August 1, 2025, the State of Florida charged Knight with eight felony counts and sixteen misdemeanor counts related to the collision, including leaving the scene of a boating accident involving injury and violating various navigational rules. *See* Mot. at 1–2; *see also* Information, *State v. Knight*, No. 25-6211-CF-T (Fla. 6th Cir. Ct. Aug. 1, 2025) (Doc. 293-2). Discovery is ongoing in Knight's criminal case, and he anticipates "[s]ubstantial criminal motion practice," including a "motion for change of venue based on extensive pre-trial publicity." Mot. at 2–3. Knight asserts, and Todd and the PSTA do not contest, that the criminal case "will not be ready for trial until no earlier than February 2027, and potentially later." Mot. at 2–3; *see* Todd Resp. at 14; PSTA Resp. at 6.

In the meantime, discovery in this limitation action is ongoing, with Knight having been deposed on April 2, 2026. *See* Todd Resp. at 5. Trial in the instant action on the petitioners' liability is scheduled for August 2027. *See* (Doc. 229); *see also* (Doc. 224) (bifurcating discovery on liability and damages). In Knight's view, this presents a problem. Knight argues that because the "proceedings concern the same accident, the same witnesses, the same physical

2

evidence, and the same alleged conduct," he must "choose between preserving his Fifth Amendment privilege and meaningfully defending the claims raised in the instant limitation proceeding." Mot. at 1–2. At Knight's recent deposition, he invoked the Fifth Amendment over 200 times, *see* PSTA Resp. at 3, which he claims could "result in an adverse inference . . . that could result in summary judgment against [him] where he was the operator of the limitation vessel at issue and cannot testify on his own behalf without the risk of self-incrimination." Mot. at 4. Knight moves to "stay this case pending the final outcome of the Criminal Case, including any appeals, or in the alternative, stay discovery directed towards Petitioners until such time." *Id.* at 3.

## II.   LEGAL STANDARDS

"The Constitution does not require a stay of civil proceedings pending the outcome of related criminal proceedings." *Shell Oil Co. v. Altina Assocs., Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994). Instead, "[a] court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.'" *United States v. Lot 5*, 23 F.3d 359, 364 (11th Cir. 1994) (citing *United States v. Kordel*, 397 U.S. 1, 12 & n.27 (1970)). Special circumstances exist, and a court "*must* stay a civil proceeding when a contemporaneous criminal action effectively prevents a defendant from offering probative evidence in defense of the civil proceeding

3

and inevitably results in an adverse civil judgment because the defendant invoked the Fifth Amendment privilege against self-incrimination." *Heartbeat of Miami v. Jane's Revenge*, No. 8:23-CV-0705-KKM-AAS, 2023 WL 11056512, at *6 (M.D. Fla. Sept. 20, 2023) (citing *Lot 5*, 23 F. 3d at 364); *see Moody v. Freestone*, No. 8:23-CV-701-SDM-MRM, 2023 WL 12167552, at *1 (M.D. Fla. June 5, 2023) (explaining that a stay is required when invocation of the Fifth Amendment "directly and unavoidably results in a judgment adverse to the defendant").

On the other hand, "the mere possibility of disadvantage in a civil proceeding, such as that which might result from this adverse inference," does not justify a stay. *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1381 (S.D. Fla. 2015) (citation modified). Rather, "a discretionary stay might be warranted if a defendant's Fifth Amendment rights are importantly endangered and other compelling factors recommend a stay." *Heartbeat of Miami*, 2023 WL 11056512, at *6 (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).[2] The relevant factors in granting a discretionary stay include:

> [1] whether the defendant's Fifth Amendment rights are importantly endangered, [2] whether a stay preserves important public and private resources, [3] whether a stay adversely affects the public interest to an unacceptable extent, [4] whether in the

---

[2] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

civil and criminal actions the legal or factual issues mostly overlap, [5] whether invoking the privilege in the civil action creates an unfair and disproportionate inference, and [6] whether some other salient and compelling factor commends a stay.

*Freestone*, 2023 WL 12167552, at *1; *see also Nelson v. HealthRight, LLC*, No. 8:18-cv-2678-T-30CPT, 2020 WL 13379334, at *2 (M.D. Fla. Jan. 13, 2020) (considering similar factors).

## III.   ANALYSIS

A stay of the limitation action is not mandatory here. To start, Mad Toyz III is not a criminal defendant, and, as an "artificial entit[y]," cannot invoke the Fifth Amendment's protections. *See Braswell v. United States*, 487 U.S. 99, 102 (1988); *see also Eagle Hosp. Physicians v. SRG Consulting*, 561 F.3d 1298, 1303 n.2 (11th Cir. 2009) ("[C]orporations do not have any Fifth Amendment rights."). Next, while Knight faces criminal prosecution, he is not a civil *defendant* in this limitation action. Instead, Knight elected to file a petition for exoneration or limitation of liability, and in doing so obtained a stay of other actions filed against him. *See* Todd Resp. at 11, 13. Knight does not provide any authority for granting a stay in this posture, where he maintains "the burden of establishing the lack of privity or knowledge" of any negligent acts. *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1062–63 (11th Cir. 1996) (describing the framework for claims under of the Limitation Act); *cf. Arango v. U.S. Dep't of Treasury*, 115 F.3d 922, 926 (11th Cir. 1997) ("A party who

5

asserts the [Fifth Amendment] privilege may not convert it from the shield against compulsory self-incrimination which it was intended to be into a sword whereby he would be freed from adducing proof in support of a burden which would otherwise have been his.") (citation modified).

Most importantly, though, Knight does not explain how his invocation of the Fifth Amendment will "inevitably result[] in an adverse civil judgment" against him. *Heartbeat of Miami*, 2023 WL 11056512, at *6. Instead, he suggests only that an adverse inference "*could* result in summary judgment." Mot. at 4 (emphasis added). Even that proposition looks tenuous. Knight does not point to a specific discovery request or deposition question that is dispositive here, and it is doubtful that he could do so in the light of available "equivalent and necessary evidence for the defense." *Freestone*, 2023 WL 12167552, at *1. As PSTA submits, for example, four adult passengers who were aboard Knight's vessel can testify about the collision, and "Knight can use forensic evidence, the authorities' accident reenactments, or even the captured video of the collision to advance the limitation action." PSTA Resp. at 8; *see also* (Doc. 293-4). Because Knight neither describes the anticipated adverse inference nor connects it to an inevitable adverse judgment, no mandatory stay is required.

Nor do other "compelling factors" warrant a discretionary stay or protective order.[3] As to the first factor, although Knight paints the risk to his Fifth Amendment rights in broad strokes, a "blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *SEC v. Wright*, 261 F. App'x 259, 262–63 (11th Cir. 2008) (per curiam). Knight has already been deposed in the limitation action, and he does not explain which future discovery endangers the exercise of his Fifth Amendment rights. Nor does Knight articulate prejudice to his criminal defense. Rather, "[t]he potential for prejudice to [Knight's] criminal defense is diminished where," as here, "private parties, and not the government, are the plaintiffs in the civil action." *Virtus Pharms., LLC v. Woodfield Distribution, LLC*, No. 8:21-CV-2427-WFJ-SPF, 2023 WL 6048797, at *3 (M.D. Fla. June 14, 2023) (citing *Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 402 (S.D. Tex. May 1, 2009)).

Next, Knight does not persuade that a stay will preserve public or private resources in this action, or that a stay promotes the public interest. The public interest favors prompt and efficient resolution of the civil claims against

---

[3] Although Knight purports to request "a protective order staying all discovery directed to [Knight]" as alternate relief, *see* Mot. at 1, Knight does not address how a protective order would differ in practice from staying the entire litigation, *cf. Santiago-Duran v. Vanguard Parking Sols., Inc.*, No. 24-24089-CIV, 2024 WL 6969831, at *2 (S.D. Fla. Dec. 15, 2024) ("A motion to stay discovery is the functional equivalent of a motion for a protective order prohibiting or limiting discovery."). I thus consider the factors relevant to a stay equally relevant to Knight's request for a protective order.

Knight and Mad Toyz, which would be seriously delayed by a stay. Knight's criminal trial will not occur for at least nine months, and pretrial motions practice and posttrial appeals will likely interject further delay. *See* Mot. at 2–3. Because the limitation action has stayed "many state civil actions" already, I agree with PSTA that an additional stay will leave "dozens of claimants and insurers . . . in limbo." PSTA Resp. at 10.

As to the factual and legal similarities between the proceedings, Knight does not elaborate on his claim that "the overlap between the civil and criminal matters is complete." Mot. at 4. While the claimants do not dispute that many facts and witnesses overlap, certain legal issues appear distinct. The limitation action requires a determination of "what acts of negligence or conditions of unseaworthiness caused the accident" and "whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Skanska USA Civil Se., Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1306 (11th Cir. 2023). But according to Knight, "[t]he primary allegation [in the criminal prosecution] is leaving the scene of a vessel accident involving serious bodily injury or death in violation of section 327.30(5), Florida Statutes," an allegation that primarily concerns Knight's conduct after the collision. Mot. at 2; *see* Information. To the extent that Knight also faces misdemeanor charges for violating various navigational rules, *see* Information

8

at 4–8, Knight does not explain the relationship between those rules and the negligence standard at issue in the liability action.

Finally, Knight's delay in seeking a stay or protective order weighs against granting his motion. Again, Knight initiated the limitation action in July 2025 after claimants filed in state court. *See, e.g.*, (Doc. 19) (listing related state court cases). Knight could have moved for a stay at any point before or after criminal charges were filed against him in August 2025. In fact, at a February 2026 status conference, the magistrate judge inquired whether "an administrate stay would be appropriate until after resolution" of Knight's criminal case. (Doc. 217) at 2. Yet Knight never requested a stay or protective order, and he has continued to actively participate in this litigation by moving for default judgment and to dismiss claims against him, serving "dozens of document requests and interrogatories" on the claimants, and sitting for a deposition last month. *See* PSTA Resp. at 3. These timing considerations do not favor a stay or protective order now.

## IV.    CONCLUSION

Because Knight fails to persuade either that an adverse judgment will result here based on his invocation of the Fifth Amendment, or that other special circumstances warrant a stay, I deny the motion for a stay. Accordingly, it is **ORDERED**:

1.    The Petitioners' Motion to Stay Civil Proceedings (Doc. 280) is

    **DENIED.**

**ORDERED** in Tampa, Florida, on May 12, 2026.


Kathryn Kimball Mizelle
United States District Judge