UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

MAD TOYZ III, LLC AND JEFFREY
KNIGHT AS THE OWNERS OF A
2018 38' STATEMENT 380 OPEN
MOTORBOAT BEARING HULL
IDENTIFICATION NUMBER
STTEB112L718, HER ENGINES,
TACKLE, AND APPURTENANCES.

Case No. 8:25-cv-1914-KKM-TGW

       Petitioner.

_____/

## REPORT AND RECOMMENDATION

Petitioners Mad Toyz III, LLC and Jeffrey Knight move to dismiss Claimant Sandy Beatriz Todd's unseaworthiness claim against Mad Toyz. Doc. 256. I respectfully recommend that the District Court grant the motion and dismiss with prejudice Todd's unseaworthiness claim. First, Todd is not a seaman and so is ineligible to assert a strict liability claim for unseaworthiness. Second, if Todd meant to assert that Petitioners were negligent in maintaining the seaworthiness of the Vessel, the claim is duplicative of a separate count.

## I.    Background

As alleged in the Amended Petition (Doc. 228), on April 27, 2025, a 2018 38-foot Statement 380 Open Motorboat (the "Vessel") owned and operated by

Petitioners Mad Toyz III, LLC and Jeffrey Knight collided with the ferry *Maddie's Crossing* (the "Ferry"). Seeking to minimize or eliminate their exposure from the Incident, Petitioners filed a petition on July 21, 2025, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, et seq., as well as Rule F of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Petition (Doc. 1).

Many have filed claims against Petitioners, including Sandy Beatriz Todd, as Personal Representative of the Estate of Jose Castro. Doc. 236. Castro was a Ferry passenger who was thrown from the Ferry and drowned when Petitioners' Vessel struck the Ferry. Doc. 236 (Todd Counterclaim) ¶¶ 18, 24, 27.

One of Todd's claims, Count VI, alleges that Mad Toyz is liable to the Estate for the unseaworthiness of the Vessel. Doc. 236 pp. 32–34. Petitioners timely moved to dismiss the unseaworthiness claim, arguing that a shipowner makes no warranty of seaworthiness to a passenger on a separate vessel. Doc. 256 p. 2. Rather, Petitioners allege, the warranty of seaworthiness extends only to "seamen in the vessel owner's employ or to carried cargo." Doc. 256 p. 2. Todd responds that she is entitled to recover from Petitioners under the theory of unseaworthiness. Doc. 271. Todd argues that the Limitation of Liability Act allows a claimant to establish "negligence or unseaworthiness,"

so Todd is "entitled to recover . . . under the theory of unseaworthiness the identical way [she is] able to recover for negligence." Doc. 271 p. 4.

## II.    Relevant Law

A claim of unseaworthiness is "a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 441 (2001). The warranty of seaworthiness requires that the ship, including the hull, decks, and machinery, be reasonably fit for the purpose for which they are intended, and that the crew be competent. *Britton v. U.S.S. Great Lakes Fleet, Inc.,* 302 F.3d 812, 818 (8th Cir. 2002); *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 825 (11th Cir. 1985); *The Osceola*, 189 U.S. 15 (1903). The warranty of seaworthiness places an absolute duty on shipowners, for which strict liability is imposed. *Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 338–39 (1955); *Yamaha Motor Corp. U.S.A. v. Calhoun*, 516 U.S. 199, 208 (1996) (observing that the unseaworthiness doctrine imposes a duty that is "absolute" and that "failure to supply a safe ship result[s] in liability irrespective of fault and irrespective of the intervening negligence of crew members.") (cleaned up).

But this liability for the unseaworthiness of a vessel is a judicially created remedy available only to seamen. *See Mitchell v. Trawler Racer Inc.*, 362 U.S. 539, 549 (1960) ("[T]he owner's duty to furnish a seaworthy ship is

3

absolute and completely independent of his duty under the Jones Act[1] to exercise reasonable care."). "The origin of a seaman's right to recover for injuries caused by an unseaworthy ship is far from clear," *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 543 (1960) (tracing its roots to Europe), but may be based on the idea that a seaman should be allowed to abandon an unseaworthy vessel without being charged with desertion, *Hamilton v. United States*, 268 F. 15, 21 (4th Cir. 1920). The Supreme Court first mentioned the concept of seaworthiness in the 1903 case, *The Osceola*, stating in dicta "[t]hat the vessel and her owner are, both by English and American law, liable to [pay] an indemnity for injuries received by seamen [as a] consequence of the unseaworthiness of the ship." *The Osceola*, 189 U.S. 158, 175 (1903). Otherwise, "prior to 1944, unseaworthiness 'was an obscure and relatively little used' liability standard, largely because 'a shipowner's duty at that time was only to use due diligence to provide a seaworthy ship.'" *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 (1996) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990)).

But, in 1944, the Supreme Court recognized that a vessel owner had a duty to seamen to supply a seaworthy vessel, and that duty could not be satisfied by due diligence. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100, 103

---

[1] The Jones Act is a federal law that extended labor and injury protections to maritime workers.

4

(1944). Subsequently, the Supreme Court extended the unseaworthiness duty by permitting actions by longshore workers.[2] *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946). But the Supreme Court has "declined to extend the duty further." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 (1996); *see also THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MAR. LAW § 5:2. Seaworthiness (7th Ed. 2026)* ("At present the seaworthiness duty is limited to Jones Act seaman and a few maritime workers known as '*Sieracki* seamen'").

Similarly, the circuit and district courts around the country have dismissed claims for unseaworthiness brought by non-seamen. *See, e.g., Kronberg v. Carnival Cruise Line, Inc.*, 741 F.2d 1332, 1335 (11th Cir. 1984) (affirming award of summary judgment to defendant shipowner on unseaworthiness claim because "[a] ship's passengers are not covered by the warranty" of seaworthiness.); *Craig v. M/V Peacock on Complaint of Edwards*, 760 F.2d 953 (9th Cir. 1985) (affirming dismissal of unseaworthiness claim brought by a technician aboard a research vessel because "like passengers on a cruise ship, these scientific personnel would not be considered seamen nor would they be entitled to benefit from the doctrine of seaworthiness."); *Double*

---

[2] "Congress effectively overruled this extension in its 1972 amendments to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*. See § 905(b)." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 n. 6 (1996).

*Fun Watersports, LLC v. Goodyear*, No. 3:25CV1175-TKW-HTC, 2025 WL 3526086, at *3 (N.D. Fla. Oct. 31, 2025) (finding the petitioner did not owe the claimant, a passenger on petitioner's pontoon boat who was injured using a slide on the boat, a heightened duty of providing a seaworthy vessel and crew); *Archer Daniels Midland, Co. v. M/T AMERICAN LIBERTY*, No. CV 19-10525, 2021 WL 1951230, at *2 (E.D. La. May 14, 2021) (granting summary judgment to petitioner on seaworthiness claims because "no claimant was a member of the crew"); *Matter of White*, 603 F. Supp. 3d 58, 72 (W.D.N.Y. 2022) (granting summary judgment to the petitioners on a warranty of seaworthiness claim because the claimant was a "land-based pension specialist with an accounting firm; she [was] not a maritime employee and was never paid or otherwise compensated for her participation on the [vessel].").

Rather, a non-seaman asserting wrongful death or personal injury claims against a vessel owner must use the duty-of-reasonable-care standard associated with negligence claims. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1334 (11th Cir.1984); *Isham v. Pac. Far E. Line, Inc.*, 476 F.2d 835, 836 (9th Cir. 1973) ("[A] passenger must recover, if at all, because of negligence; the shipowner does not owe a duty to passengers, as he does to seamen, to provide a 'seaworthy' vessel.")

Courts—including the Eleventh Circuit—have often described Limitation of Liability Act actions as "limit[ing] the liability of vessel owners who were not in some sense responsible for the specific negligent acts *or conditions of unseaworthiness* that caused the accident." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1304 (11th Cir. 2023) (citing *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996)). This language perhaps implies that all claimants (i.e., non-seamen) in Limitation of Liability Act actions may assert claims for unseaworthiness.[3] But only seamen may advance unseaworthiness claims in a Limitation of Liability Act action. *See Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1300 (7th Cir. 1992); *In re Captain Juan, Inc.*, 607 F. Supp. 3d 118, 125 (D. Mass. 2022); *Matter of Angelette, LLC*, 329 F. Supp. 3d 814, 817 (D. Alaska 2018).

Finally, while some courts have noted a vessel's unseaworthiness in adjudicating a non-seaman claimant's claims, those Courts applied a

---

[3] Indeed, several cases on which Todd relies in arguing that a claim for unseaworthiness is available to her use this language. *See* Doc. 271 (citing *In re Hellenic Inc.*, 252 F.3d 391, 394 (5th Cir. 2001) and *Matter of Louisiana Swamp Tours, L.L.C.*, No. CV 04-2786, 2006 WL 8462869, at *4 (E.D. La. Mar. 21, 2006) for the proposition that "Once the claimant establishes negligence or unseaworthiness, the burden shifts . . . .",). But these cases did not find that a strict liability claim of unseaworthiness was available to non-seamen claimants.

negligence, rather than strict liability, standard. *See Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1300 (7th Cir. 1992) *(*"Amoco tries to confuse matters by arguing that, in finding that AIOC's negligence rendered the Amoco Cadiz unseaworthy and caused its grounding, the district court improperly applied the admiralty doctrine of unseaworthiness, which imposes strict liability in favor of crew and cargo owners. Amoco points out that the category of individuals protected by this doctrine does not include the plaintiffs in this case. Amoco mischaracterizes the court's holding. Specifically, the court held that 'AIOC negligently performed its duty to ensure that the Amoco Cadiz in general and its steering gear in particular were seaworthy, adequately maintained and in proper repair.'" . . . Although the district court did indeed use the word "seaworthy," it was not applying the admiralty doctrine of unseaworth*iness*.").

As the Seventh Circuit explained in *Matter of Oil Spill by Amoco Cadiz*:

> "[L]iability based upon unseaworthiness is wholly distinct from liability based on negligence." *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498 (1971). The unmistakable basis for the district court's decision that [the vessel owner] was liable was that its *negligence* caused the unseaworthy condition of the [vessel]. The court stated, "The *negligence* of [the vessel owner] in failing reasonably to perform its obligations of maintenance and repair . . . was a proximate cause of the breakdown of the system on March 16, 1978, the grounding of the vessel and the resulting pollution damage." *Id.* 1984 A.M.C. at 2192 (emphasis added). The ship's "unseaworthy" condition, then, was the direct result of the failure to exercise reasonable care in the maintenance and operation of the vessel.

*Id.* at 1300.[4]

### III.   Analysis

Count VI seeks to impose liability on Mad Toyz for allowing an allegedly unfit person, Knight, to captain the Vessel. Neither the pleading nor Todd's response to the present motion makes clear whether Todd means to assert a strict liability claim under the unseaworthiness doctrine or a negligence claim for allowing the Vessel to be captained in a manner that was unseaworthy.

If the former, Todd's claim is prohibited, because it is brought on behalf of Ferry passenger Castro. Doc. 236 (Todd Counterclaim) ¶ 18. There is no allegation—nor does Todd argue in response to the motion to dismiss—that Castro was a seaman or crew member on the Petitioners' Vessel. Thus, Todd is not eligible to assert a strict liability claim for unseaworthiness.

If Todd means to assert a negligence claim for allowing the ship to be captained in a manner that was unseaworthy, the claim is redundant of Todd's

---

[4] Todd relies on *In re Dieber*, 793 F. Supp. 2d 632 (S.D.N.Y. 2011), which found—in an action brought by passengers on a vessel struck by the petitioner's vessel—that the petitioners were negligent and that their vessel was "not a seaworthy vessel" because it was not competently crewed. *Id.* at 636. Even if the *Dieber* court extended strict liability for unseaworthiness to a non-seaman (though it is not clear that this issue was raised), this Court is not bound by that decision. Rather, it must follow the decisions of the Supreme Court and Eleventh Circuit that have limited strict liability for unseaworthiness to actions brought by seamen.

claim in Count V that Mad Toyz negligently entrusted Knight with the Vessel. Doc. 236 (Todd Counterclaim) p. 31.

## IV.   Conclusion

For these reasons, I RESPECTFULLY RECOMMEND that the Court GRANT Petitioners' Motion to Dismiss (Doc. 256) and DISMISS Todd's unseaworthiness (Count VI) with prejudice.

**SUBMITTED** for consideration on May 20, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.